EDISON STORAGE BATTERY COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., RESPONDENTS.

CRUCIBLE STEEL COMPANY OF AMERICA, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., RESPONDENTS.

SNEAD & COMPANY IRON WORKS, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., RESPONDENTS.

INDEPENDENT LAMP AND WIRE COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., RESPONDENTS.

BOUND BROOK OIL-LESS BEARING COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., RESPONDENTS.

Argued June 3, 1919—Decided November 3, 1919.

1. Where a public utility company increases its rates, to take effect on a fixed date, and the board of public utility commissioners, on hearing, modifies the rates without suspending them by any order, an order affirming the modified rates to take effect at the date fixed by the company will not be set aside on *certiorari*.

2. Private contracts as to rates to be charged for furnishing electric power must yield to the public welfare, and the state may fix a just and reasonable rate without regard to that reserved in the contract.

On writs of *certiorari.*

Before Justices TRENCHARD, BERGEN and KALISCH.

For the Edison Storage Battery Company,. *McCarter & English.*

For the Crucible Steel Company of America, *Treacy & Milton.*

For the Sneed & Company Iron Works, Bound Brook Oilless Bearing Company and the Independent Lamp and Wire Company, *Clarence E. Case.*

For the Board of Utility Commissioners, *L. Edward Herrmann.*

For the Public Service Electric Company, *Frank Bergen.*

The opinion of the court was delivered by

BERGEN, J.   In each of the five cases above set out a writ of *certiorari* was allowed to review an order of the board of public utility commissioners, dated July 16th, 1918, granting to the Public Service Electric Company the right to increase its rate of charges for electric energy furnished by it to users of electric current for mechanical power to be applied to such energy supplied after February 1st, 1918.. The record shows that the electric company extensively published its intention to make an additional charge for all electricity served for power commencing with sales during the month of February, 1918.  Under the statute this became effective February 1st, 1918, subject to the power of the board of utility commissioners to determine whether the proposed change of rates is just and reasonable, but the board is not compelled to act except on the written complaint of a properly interested person. *O'Brien* v. *Board of Public Utility Commissioners,* 92 *N. J. L.* 44.  After the rates were changed the electric company

presented to the board its petition for approval, which the board refused, but gave leave to the company to file new tariffs providing for a war surcharge of twenty-five per cent. and a coal clause, to go into effect with the February sales, which the board said it would approve. This the company did, and the board filed its report approving the new tariffs. No order of suspension was made, but immediately after the report an application for a rehearing was made, and, after a lengthy discussion, the board adhered to its former finding, and made the order complained of. A short analysis of the proceeding is, that the electric company gave notice of an increase of rates; that it applied to have the commission to approve the rates; that the board modified the rates, stating what it would approve; that a schedule of the agreed rates was presented; that an application for a rehearing was made and granted; that the board approved the modified schedule of rates to apply to February sales and made its order to that effect. We are of the opinion that the written application for a re-hearing was, in substance, a complaint against the rates recommended by the board, and adopted by the electric company, for, while the board indicated that it would approve, it had not made any order, and, by its subsequent hearing, treated the matter as one not finally determined, and that, therefore the complainants had a standing which permitted them to object. We are also of opinion that the board had the right to order the modified rates to be effective as of the date fixed by the company which were never suspended by any order of the board. This result leaves but two questions to be considered—*first,* should the writs be dismissed, as urged by defendants, because no application for their allowance was made within thirty days from the date the order became effective. We are of opinion that this motion has no merit. The only order under review is that of July 16th, 1918; in fact, there is no other order mentioned in the writs, and these were all allowed within thirty days after the date of the making of the order; *second,* the prosecutors show that they have contracts with the electric company covering a period later than

February, 1918, which fixes the rates during the terms of their respective contracts at a lower sum than that fixed by the order complained of, which they claim impairs the obligation of their contracts in violation of their constitutional rights. But this question has been determined contrary to the prosecutors' contention by the Supreme Court of the United States in *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 248 *U. S.* 372, where the identical objection was raised. There the public service corporation, acting under the orders of a state commission having power to regulate rates for the service of electricity, adopted rates fixed by the state commission which were higher than those contracted for by the respective parties. Whether the utility commissioners are required to determine private rights, arising on contracts, in fixing rates for the public good, and to discriminate between those of the public who have contracts and those who have not, and thus make a discrimination according to agreements between citizens, or whether their orders should be general as to all who are within the class affected, we are not required to pass on in this case, although inclined to the opinion that such orders should be general, leaving the contracting parties to settle their rights in an action, raising that question, in which they are parties, and not by *certiorari.*

The record sustains the finding of the board that the rates fixed are just and reasonable, and we being of opinion that the order properly relates to the initial proceeding changing the rates, and that private contracts must give way to the public welfare when they conflict, if that question can be raised in these proceedings, the writs in all the cases will be dismissed, with costs.